**JASON LIVINGSTON,**

              **Plaintiff,**

**v.**                                    **Civil No: 22-CV-00144-HEH**

**VROOM AUTOMOTIVE LLC**
**d/b/a VROOM**
**d/b/a TEXAS DIRECT AUTO**
              **Defendant**

National online car retailer Vroom routinely traps unwary purchasers in a vehicle purchase contract for what is typically a person's second-largest asset, yet Vroom is deliberately incapable of providing critical documentation to allow thousands of those purchasers to register and lawfully operate their vehicles. Facebook has a group page aptly named "Vroom Horror Stories," which has over 2,200 members sharing their horror stories for which there is virtually no government oversight or meaningful recourse. Here is my personal Vroom nightmare:

## <u>AMENDED COMPLAINT</u>

Jason Livingston (the "Plaintiff" or "Mr. Livingston"), petitions this Court to find that the Defendant, Vroom, Inc. ("Vroom" orthe "Defendant"), has engaged in reprehensible conduct constituting breach of contract, common law fraud, and violations of the Virginia Consumer Protection Act ("VCPA"). The Plaintiff prays that this Court grant the relief from this nightmare and award damages as requested in this Complaint, and states the following in support thereof:

## JURISDICTION AND VENUE

1.     Mr. Livingston brings this action for breach of contract and common law fraud, as well as pursuant to § 59.1-204 of the VCPA, which provides, among other things, that any person who suffers loss as a result of a violation of the VCPA may bring an action to recover damages including reasonable attorneys' fees and court costs.

2.     The Circuit Court for Chesterfield County, Virginia has authority to entertain this action and to grant the relief requested herein pursuant to Virginia Code §§ 17.1-513.

3.     Venue is permissible in this Court pursuant to Virginia Code §§ 8.01-262(8) and (10) because the vehicle at issue was received in Chesterfield County; the Defendant is a nonresident of the Commonwealth and Plaintiff resides in Chesterfield County. Defendant is a national publicly traded corporation that offers an "end-to-end, ecommerce platform for buying, selling, transporting, reconditioning, pricing, financing, registering and delivering vehicles nationwide,"[1] including all of the Commonwealth of Virginia.

## PARTIES

4.     Mr. Livingston is a citizen of Virginia who resides in Chesterfield County, Virginia and is regularly employed in the City of Richmond, Virginia

5.     Vroom is a Delaware corporation founded in 2013 and is based in New York, New York. The Company is an ecommerce platform that buys and sells used vehicles through its website, Vroom.com and through additional content aggregators including CarGurus.com. Through the Company's online platform, consumers can research and select from thousands of fully reconditioned vehicles. After a vehicle is purchased, the Company provides contact-free

---

[1] Vroom, Inc. 2020 Annual Report at page 8. Available at: https://ir.vroom.com/static-files/a3b6b788-f9b3-473a-b376-9713469e2996 ; accessed January 28, 2022.

delivery to the buyer's driveway. Vroom advertises its vehicles to consumers throughout the United States including the Commonwealth of Virginia through a variety of means including television ads during the Super Bowl, internet social media, and online websites.

6.      Vroom, does not possess a Certificate of Authority to Transact Business in the Commonwealth of Virginia nor is Vroom a licensed Virginia auto dealer.

## **FACTS**

7.      On July 6, 2021, Livingston electronically executed a contract for the purchase of a 2018 Honda CR-V from Vroom. The selling price for the vehicle was $24,999.00. In addition to the selling price, Vroom charged and collected additional fees including $125.00 "Title Fee" and $30.75 "License & Registration Fee." In addition to all other taxes and fees, the total price was $26,409.13. Exhibit 1 – Vroom retail purchase agreement.

8.      Also on July 6, 2021, this agreement was electronically signed on behalf of Vroom by Mark Raszkowski. Exhibit 1 – Vroom retail purchase agreement.

9.      Mr. Livingston paid a down payment of $2,700.00 by credit card and wire transfer to Vroom, and financed $23,709.13 with a loan from Capital One Auto Finance. The loan payment due to Capital One Auto Finance is $422.81 per month for 60 months. See Exhibit 2 – Motor Vehicle Retail Installment Sales Contract.

10.     Mr. Livingston simultaneously executed a Texas Motor Vehicle Sales Tax Exemption Certification for Vehicles Taken out of State, prepared and furnished by Vroom for electronic signature, claiming exemption from payment of motor vehicle sales tax for the purchase of the CR-V. See Exhibit 3 - Texas Motor Vehicle Sales Tax Exemption Certification for Vehicles Taken Out of State.

11.    Prior to executing the July 6 agreement, Vroom requested proof of auto insurance and a copy of both sides of Mr. Livingston's identification. Mr. Livingston provided copies of the requested materials within 7 minutes. See Exhibit 4 – Email from Vroom, July 5, 2021.

**The Vroom Automotive Specialist is systematically unreachable**

12.    On July 5, 2021, Mr. Livingston spoke by telephone with Duane Harris, a Vroom Automotive Specialist about the purchase process. Mr. Harris followed up by email to Mr. Livingston and stated: "I wanted to send a follow up email with my contact information . . ." and included as contact information the following telephone number: (877) 916-1000 ext. 1350. Notably, the sender's email address is a generic carspecialists@vroom.com, and is not unique to Duane Harris. Mr. Livingston replied to Mr. Harris' purported email address on July 7, 2021 with questions about the CR-V prior to vehicle delivery. See Exhibit 6 – Email correspondence with Duane Harris.

13.    The vehicle was delivered to Mr. Livingston's home at 1:00am on July 8, 2021, with 60 day temporary tags. So far so good.

14.    By email on July 8, 2021 at 2:26 pm, Vroom congratulated Mr. Livingston on the delivery of the CR-V and advised that "if you need to reach Vroom from now on, please contact our Customer Support team by calling 855-534-3755" and "Your temporary tags included with your vehicle allow you to drive right away. Look for a titling overview email in the next few days which outlines what is needed to get your vehicle registered." This Vroom email blamed the "pandemic" for an estimated DMV processing time of 12-weeks. Vroom also promised to send an email with a tracking number for the license plates. See Exhibit 5 – Emails from Vroom, July 8, 2021. It would soon become evident that neither the pandemic

nor any state DMV was to blame. The fault and the sole ability to provide any remedy rests squarely with Vroom.

15.     Vroom promises on its website that "you will receive instructions regarding titling and registration specific to your deal via email, about 24 hours after delivery."[2]



16.     Vroom also commits to providing title and registration documents in approximately 6-8 weeks via overnight mail.[3]



17.     Mr. Livingston replied to Mr. Harris a second time on July 20, 2021 providing an

---

[2] https://www.vroom.com/marketing/contact?articleId=ka02G000000LgzLQAS, accessed January 30, 2022.

[3] https://www.vroom.com/marketing/contact?articleId=ka02G000000LgzCQAS, accessed January 30, 2022.

updated insurance declarations page showing the CR-V has been added to his auto insurance policy and again asking for information on registration and license plates. This is the second time (but not the final time) that Mr. Livingston was requested and did provide documentation of automobile insurance coverage. The second request for insurance information foreshadowed the upcoming nightmare, but Mr. Livingston remained optimistic. See Exhibit 6 – Email correspondence with Duane Harris.

18.     Despite multiple follow up calls and emails, Mr. Harris was never to be heard from again. Vroom created and maintains a virtually impenetrable barrier to reaching an actual human, or to follow up with a specific employee. Calls to the Vroom customer support number are placed in an endless queue for hours on end, for hundreds and potentially thousands of other customers experiencing their own personal nightmare with Vroom.

**Insurance coverage, emissions inspection, or just another delay tactic?**

19.     Another month passed without the tile or registration until an unnamed "Titles Support Agent" sent an email to Mr. Livingston on August 27, 2021 requesting a copy of the insurance declarations page showing Mr. Livingston's coverage for the CR-V. Mr. Livingston responded and provided a copy of the requested declarations page within 8 minutes. This was the third request from Vroom for insurance documentation and was purportedly necessary for Vroom to request another temporary 30-day tag, since the initial temporary tag was going to expire in the first week of September. Frustrated with the lack of response, Mr. Livingston replied that "I need the final, official tags and registration information please; I do not need any more temporary tags." The unnamed Vroom employee responded that they "will send [Mr. Livingston's] case to the titles and registration department to help you. They will have the answers you need." See Exhibit 7 – Email

from Vroom August 27, 2021.

20.     The titles and registration department did not respond to Mr. Livingston and did not provide a title or registration. If the department had the answers to the CR-V title and registration questions, they chose to keep those answers to themselves.

21.     On September 3, 2021, Vroom provided the second temporary 30-day tag expiring October 3, 2021 to Mr. Livingston by email, with a hard copy sent by Federal Express. This particular message came from Amber Cooper-White at Vroom rather than the typical generic support@vroom.com email address. On September 7, Mr. Livingston responded to Ms. Cooper-White and asked the status of getting the actual license plates and registration. There was no response. See Exhibit 8 – Email correspondence with Amber Cooper-White.

22.     On September 18, Mr. Livingston again inquired of Ms. Cooper-White about the status of the license plates and registration since it had now been over two months since the CR-V was delivered. Not surprisingly, there was no response. See Exhibit 8 – Email correspondence with Amber Cooper-White.

23.     On September 28, Mr. Livingston responded to Ms. Cooper-White and asked the status of getting the actual license plates and registration since it had now been nearly three months since the CR-V was delivered and the most recent temporary tag was about to expire. Consistent with their prior pattern in this growing nightmare, there was no response. See Exhibit 8 – Email correspondence with Amber Cooper-White.

24.     On October 5, 2021, an email from generic support@vroom.com advised that a request for an updated temporary tag for the prior tag that expired on October 3 had been requested. Later that day, the same email account sent a new 30-day temporary tag effective on October 5 and expiring

on November 4, 2021. See Exhibit 9 – Email correspondence from Vroom. It has now been 3 months since the car was purchased and there is no end in sight.

25.     On October 17, over three months after the CR-V was delivered, Vroom sent by federal express a Limited Power of Attorney form for Mr. Livingston to sign and have notarized, permitting Vroom to seek registration and title for the vehicle. Mr. Livingston executed and had notarized the form on October 18, and immediately returned it to Vroom by Federal Express overnight delivery. This was an encouraging development and it seemed like the missing piece Vroom needed to provide the title and registration. But Vroom was unable to use this power of attorney form to end this nightmare and two months later would request the same form again.

26.     On November 6, 2021, Vroom employee Eboney Jeter sent an email from generic support@vroom.com advising that a request for an updated temporary tag for the prior tag that expired on November 4 had been requested and thanking Mr. Livingston for submitting requested documentation. On November 8, Jeter sent an email containing a new 30-day temporary tag that expires on December 8, 2021. Another month has passed and it has now been 4 months since the car was purchased. The nightmare continues but at least the temporary tags keep coming. See Exhibit 10 – Email Correspondence with Eboney Jeter.

27.     Later that afternoon, Mr. Livingston emailed Vroom asking for yet another 30-day temporary tag because the current one was going to expire on December 8. See Exhibit 11 – Request for Temporary Tag. Mr. Livingston was nearly 5 months into this nightmare, but at least Vroom had been providing temporary tags. Soon, Vroom would fail even to provide a temporary tag, which would render the CR-V illegal to operate, as Vroom had done for hundreds and perhaps thousands of other unwitting purchasers.

**<u>Vroom telephone customer support is systematically ineffective</u>**

28.     A call to Vroom customer support on November 23, 2021 was the last straw- further efforts to contact Vroom by phone would be fruitless and consume even more time. Mr. Livingston took screenshots throughout the call to demonstrate just how long he had been holding for a competent and empowered customer service support team member. This is the last screen shot before Vroom disconnected the call after exactly 2 hours.



29.     Upon information and belief, hold times for Vroom Customer Service routinely exceed 3 hours if a caller can endure the nightmare that long.  Also upon information and belief, certain telephone numbers are "flagged" by Vroom and placed into an excessively long queue that ultimately results in the caller being disconnected by Vroom after a multi-hour hold time.

30.     After spending two hours on hold and then being deliberately disconnected by Vroom, Mr. Livingston concluded that Vroom was unable or unwilling to provide the title and registration that it was legally obligated to provide. There would be no further attempts to call Vroom. Upon information and belief, Vroom utilizes a deliberate strategy to deflect and deter

thousands of dissatisfied customers because Vroom is unable to satisfy its most basic legal and contractual obligations as a car dealer.

### The Texas Department of Motor Vehicles found violations but could not help

31.     On November 23, Mr. Livingston submitted a complaint outlining the foregoing to the Texas Department of Motor Vehicles as the Vroom dealer has an address of 12053 Southwest Fwy, Hwy 59, Stafford, TX 77477. On December 17, 2021, Investigator Tom Catron advised that the subsequent investigation revealed evidence of violation of the laws and/or rules regulated by the Texas DMV. See Exhibit 12 – Correspondence from Texas Department of Motor Vehicles. Notably, Investigator Catron refers Mr. Livingston to the Virginia DMV or to an attorney because the Texas DMV cannot provide any relief to complainants.  Upon information and belief, the Texas DMV has conducted scores of investigations of similar complaints and found evidence of Vroom's repeated violation of Texas laws for motor vehicle dealers.

32.     Mr. Livingston contacted the Virginia Department of Motor Vehicles who advised him that they have received no information about the CR-V from Vroom, and thus, the Virginia DMV can provide no relief to this worsening nightmare.

### The Better Business Bureau is ineffective

33.     Mr. Livingston also noted a complaint with the Better Business Bureau ("BBB"), and while the BBB cannot provide relief, the complaint did provoke some activity from Vroom. On November 29, 2021, Ericka Salcedo, Senior Customer Experience Specialist at Vroom emailed Mr. Livingston and asked for an emissions test before Vroom could send the title. Mr. Livingston immediately responded and explained that an emissions test is not required in Chesterfield County. It has been nearly 5 months since the vehicle was purchased and this was the first mention of an

emissions test. In follow up communications, Ms. Salcedo provided a checklist for registering a vehicle in Virginia, which noted that emissions inspections are required only in the counties of Arlington, Fairfax, Loudon, Prince William, or Stafford, or the cities of Alexandria, Fairfax, Falls Church, Manassas, or Manassas Park. At all times, Vroom knew or should have known that the vehicle was delivered in and would be registered in Chesterfield County, where emissions testing is not required for registration. This eleventh hour request for an unnecessary emissions test is yet another stall tactic by Vroom, the motivations for which are known only to Vroom.

34.     Realizing that the latest temporary tag was going to expire on December 8 and ever the optimist, Mr. Livingston began requesting a new 30-day tag through electronic mail on the following dates, which were each assigned different case numbers by Vroom:

| Date of Request | Vroom Case# |
|---|---|
| 11-23, 12-2, 12-14, and 12-31-21 | 00589632 |
| 11-24-21 | 00594747 |
| 11-26-21 | 00598897 |
| 11-29-21 | 00602925 |
| 12-2, 12-4, and 12-7-21 | 00618034 |

Each time Mr. Livingston submitted a new request for a 30-day tag, Vroom sent an automated response stating that one of its support agents would get back to him "very shortly." That did not happen for <u>any</u> of the above ten electronic pleas for help. See Exhibit 14 – Requests to Vroom Customer Service.

**Pleas to senior management go unanswered**

35. Mr. Livingston searched online for any guidance to end this nightmare and discovered a Facebook Group called "Vroom.com Horror Stories," which has since grown to over 2,200 members. Available publicly at: https://www.facebook.com/groups/784888658945089/. It brings little comfort to know that there are hundreds, and likely thousands of other similarly situated car buyers for whom Vroom will not provide title and registration documents.

36. From this Facebook page, some posters responded having success contacting members of the Vroom senior management team including Jenny Watson, the Vroom Chief Experience Officer. With guarded optimism, Mr. Livingston sent a detailed email to Jenny Watson asking only for her to assist in providing a title and registration for a car purchased 5 months earlier and which could not be driven legally because the temporary tags had expired 3 weeks earlier without replacement. In typical Vroom fashion, there was no response whatsoever. Ms. Watson's professional profile indicates her goal is "Building an unbelievable customer experience." It's true - the Vroom nightmare has been a truly unbelievable experience.

37. Even when Mr. Livingston was literally reduced to begging for help, Vroom would not meet its legal or contractual obligations. See Exhibit 16 – Livingston December 31, 2021 email to Vroom customer support. Nearly seven months into this nightmare, Vroom still refuses to meet its obligations.

## Arbitration Provision in the Purchase Agreement

38. Mr. Livingston could get no relief with Vroom customer service, the Better Business Bureau, the Texas DMV, or the Virginia DMV, leaving the courts as the only remaining avenue for relief. The July 6, 2021, purchase agreement however contained a provision requiring the parties to submit claims for arbitration. See Exhibit 1 – Vroom retail purchase

agreement at §15.

39.     The purchase agreement, including the Arbitration provision, was drafted solely by Vroom and circulated via DocuSign for electronic signatures at the time of the purchase. The electronic signature portal through DocuSign is very convenient, and automatically populates documents with certain data fields including detailed documentation of the time and date that a document is executed to comply with the United States Electronic Signatures in Global and National Commerce (ESIGN) Act, and the Uniform Electronic Transactions Act (UETA). See Exhibit 1 – Vroom retail purchase agreement

40.     On November 29, 2021, Mr. Livingston sent a demand for arbitration to Vroom by certified mail, return receipt requested, and also a courtesy copy by electronic mail to legal@vroom.com. Vroom did not respond by email or in any other way to this Notice. Upon information and belief, Vroom systematically refuses delivery from the U.S. Post Office of documents sent to it via certified mail. In this instance, Vroom did not accept receipt of this notice and no return receipt was received. See Exhibit 17 – Arbitration Demand Letter 11-29-21.

41.     On December 2, the Vroom "Titles and Registration" emailed Mr. Livingston advising that Vroom needed additional signed documents in order to register the vehicle in Virginia. Notably, Vroom again requests an emissions inspection and writes that it is required only in the "counties of Arlington, Fairfax, Loudon, Prince William or Stafford, or the cities of Alexandria, Fairfax, Falls Church, Manassas, or Manassas Park." Mr. Livingston responds again and explains that the vehicle will be garaged and registered in Chesterfield County where no emissions inspection is required. See Exhibit 18 – Correspondence with Vroom Titles and Registration.

42. On December 7, Vroom sent a packet of hard copy materials for Mr. Livingston to sign and return to Vroom in order to move forward. These included:

- a new Vroom retail purchase agreement;

- odometer disclosure statement;

- Limited Power of Attorney (in addition to the one sent on October 18);

- Application for Certificate of Title and Registration; and

- Texas Dealer's Reassignment of Title for a Motor Vehicle.

43. Vroom had pre-printed "07/06/2021" at the top of the purchase agreement and odometer disclosure statement, and had manually highlighted areas for Mr. Livingston to initial and sign the documents. Inexplicably, Vroom hand wrote the date of "07-06-2021" on the Texas Dealer's Reassignment of Title for a Motor Vehicle. Mr. Livingston manually crossed out the Vroom-preprinted and handwritten dates, and wrote the actual date that he signed the documents, which was December 8, 2021. See Exhibit 19 – Revised Agreement and Materials dated December 8, 2021.

44. The Limited Power of Attorney must be notarized, so Vroom could not artificially impose their desired effective date for that document. Mr. Livingston signed and had this document notarized on December 8, 2021.

45. Mr. Livingston signed these materials with *accurate* dates of signature and returned them to Vroom via Federal Express overnight delivery on December 9.

46. Vroom responded by email on December 15 and demanded that Mr. Livingston use a *false* date for his signature in order to provide the registration and tile for his CR-V and release him from this nightmare. Exhibit 20 – December 15, 2021 email from Ericka Salcedo.

47.     It is not clear why Vroom insisted upon a false signature date for this agreement, particularly where it routinely employs a sophisticated and compliant electronic signature platform through DocuSign.  Upon information and belief, Vroom intended to prevent Mr. Livingston from rejecting the arbitration provision of the purchase agreement within 30 days of the contract signing now that this transaction had devolved into a continuing nightmare with a high potential claim for damages. Having no other recourse, Mr. Livingston complied and signed the materials using the Vroom-supplied false date.  See Exhibit 21 – Revised Agreement and Materials falsely dated July 6, 2021.

48.     On December 31, 2021, Mr. Livingston sent an Arbitration "Rejection Notice" to Vroom by certified mail, return receipt requested, and also a courtesy copy by electronic mail to [legal@vroom.com](mailto:legal@vroom.com). Vroom did not respond by email or in any other way to this Notice. Upon information and belief, Vroom systematically refuses delivery from the U.S. Post Office of documents sent to it via certified mail. In this instance, Vroom did not accept receipt of this notice and no return receipt was received. See Exhibit 22 – Arbitration Rejection Notice 12-31-21

49.     Based on the lack of acknowledgement or any activity from Vroom in response to Mr. Livingston's November 29 Arbitration Demand Letter, Vroom has waived any right to enforce or otherwise demand arbitration pursuant to the July 6, 2021 Vroom retail purchase agreement.

50.     Alternatively, under the superseding Vroom retail purchase agreement <u>actually</u> executed on December 8, 2021, Mr. Livingston has timely sent the Arbitration "Rejection Notice" to Vroom by certified mail as required by Section 15 of the retain purchase agreement. See Exhibit 19 – Revised Agreement and Materials dated December 8, 2021 at Section 15.

51.    In either event, Vroom's outrageous conduct and pattern of behavior is shocking and offends all notions of fair dealing and common decency, and Vroom is therefore estopped from claiming the benefits, protections, and limitations of its arbitration and limitation of damages provision.

52.    Vroom advised Mr. Livingston that it had exhausted the maximum number of temporary tags that it could send for the CR-V, and the vehicle had been illegal to operate since December 8 due to the expired temporary tag.  Ultimately, on January 6, 2022, Vroom arranged for and committed to pay for a rental vehicle for Mr. Livingston.  See Exhibit 23 – Correspondence and Enterprise Contract for a Rental Vehicle.

53.    The rental vehicle was secured through February 2, 2022, at a cost of $2,032.80.  Almost seven full months after the vehicle was purchased, Vroom would prefer to pay an additional $2,000 rather than provide the title and registration to Mr. Livingston; and there is no guaranty that the title and registration will be obtained in the next few days, nor has there been anything in past Vroom behavior to inspire confidence in their ability to deliver these critical documents.

## CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

54.    The Plaintiff re-alleges and incorporates herein by reference all matters set forth in Paragraphs 1 through 53 above.

55.    Under the Virginia common law, a plaintiff asserting a claim for breach of contract must prove the following elements: 1. there exists a legally enforceable obligation of a defendant to a plaintiff; 2. the defendant's violation or breach of that obligation; and 3. Injury or damage to the

plaintiff caused by the breach of obligation.

56.     Vroom owes several legally enforceable obligations to Mr. Livingston including but not limited to the obligation to provide good and marketable title to the vehicle that it purported to sell to Mr. Livingston; the obligation to perfect the lien on the title to the vehicle in favor of Mr. Livingston's lender, Capital One Auto Finance.

57.     As explained in great detail, in seven months, Vroom has breached that obligation by failing to provide title and registration to the CR-V it sold to Mr. Livingston.

58.     As a result of Vroom's breach of its basic obligations to purchasers as a car dealer, Mr. Livingston has suffered and continues to suffer damages including but not limited to loss of use, impairment of title; impairment of his insurable interest in the vehicle; inability to sell, transfer or otherwise encumber the vehicle; costs of automobile insurance for a vehicle unable to be operated; depreciation for a vehicle unable to be operated; and loss of enjoyment for a vehicle unable to be operated lawfully.

## COUNT II – COMMON LAW FRAUD

59.     The Plaintiff re-alleges and incorporates herein by reference all matters set forth in Paragraphs 1-58 of this Complaint.

60.     Virginia common law provides a private right of action for fraud when a plaintiff can prove by clear and convincing evidence that: 1. the seller intentionally and knowingly; 2. Made a false representation; 3. of a material fact; 4. that was relied upon by the plaintiff buyer; and that 5. Resulted in damaged to the party misled.

61.     Vroom intentionally and knowingly made a series of false representations of material including but not limited to the following: that it was a capable internet-based car dealer; that it

was a car dealer licensed to provide vehicles in the Commonwealth of Virginia; that it possessed the requisite skills, knowledge, and resources to provide car dealer services in the Commonwealth of Virginia; that it possessed title to the CR-V it sold to Mr. Livingston; that it was willing to transfer title to the CR-V; that it had the capability to transfer title to the CR-V; that Mr. Livingston would receive instructions regarding titling and registration specific to his deal via email, about 24 hours after delivery; that could and was capable of providing title and registration documents approximately 6-8 weeks after vehicle delivery via overnight mail; that on more than ten separate occasions, Vroom stated falsely that one of its support agents would respond to him "very shortly"; that an emissions inspection was a necessary prerequisite to providing title and registration to Mr. Livingston; that the pandemic and the Virginia DMV were to blame for any delays in providing these essential documents.

62.     Vroom has known for years that it was suffering from a "bottleneck" in its sales support and needed to invest heavily in building out the Company's sales support and logistics networks.[4] Vroom failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Vroom made false and/or misleading statements and/or failed to disclose that: (i) Vroom's inventory growth had far outpaced the capabilities of its existing sales and support personnel, creating a logistical bottleneck that threatened the Company's profits, the value of its existing inventory, and its ability to achieve positive cash flows; (ii) Vroom's lack of adequate sales and support staff had resulted in

---

[4] *See* Hudda v. Vroom, Case 1:21-cv-03296 (S.D. N.Y.) ECF 1 at pp. 20-21, (discussing third quarter 2020 financial results and the accompanying earnings call).

degraded customer experiences and lost sales opportunities; and (ii) as a result of all the foregoing, the Company's public statements were materially false and misleading at all relevant times. *Id.*

63.     Based on these misrepresentations of material facts, Mr. Livingston sent $2,700 directly to Vroom and borrowed $23,709.13 from Capital One Auto Finance to purchase a vehicle that Vroom did not have the authority or ability to sell legally.   The vehicle is essentially worthless to Mr. Livingston because he cannot operate it, he cannot transfer it, and through depreciation, and it continues to be less valuable every day while he pays to keep it fully insured.

64.     Mr. Livingston is entitled to receive any costs associated with the non-transfer of title including an award for his reasonable attorneys' fees and costs.

65.     Mr. Livingston further requests an award of punitive damages that punish Vroom for its deceptive conduct.   Vroom received revenues over $2 Billion Dollars in 2021[5], while stranding millions of dollars of vehicles for hundreds and perhaps thousands of consumers because it routinely fails to provide titles and registration to customers like Mr. Livingston.

66.     This is not an isolated incident.   In the past week, the Florida Department of Highway Safety and Motor Vehicles filed a complaint against Vroom alleging that it failed in 47 cases to transfer the vehicle title in accordance with Florida law, which gives dealers a 30-day transfer deadline.[6]   While the state can collect fines from Vroom for noncompliance, that does nothing to

---

[5] See Vroom Investor Relations at: https://ir.vroom.com/news-releases/news-release-details/vroom-reports-strong-third-quarter-2021-results#:~:text=Ecommerce%20gross%20profit%20increased%20161.0,increase%20in%20ecommerce%20units%20sold, accessed January 30, 2022.
[6] https://floridapolitics.com/archives/490120-state-files-complaint-against-vroom-over-delayed-title-transfers-lawmakers-look-for-solutions/ accessed January 30, 2022.  Similar Vroom horror stories abound from different states including Tennessee, Massachusetts, and Texas.

resolve the problem for the unwitting purchasers like Mr. Livingston who have waited seven months for this critical documentation from Vroom

67.     Vroom has intentionally created barriers for individuals to obtain recourse while stringing along customers on endless phone calls and hold times to its single customer support telephone line, and countless empty promises to return emails begging for assistance. It created a purchase contract of adhesion and circulated it through an exotic electronic platform, but when it came time to execute a contract with Mr. Livingston, Vroom insisted that Mr. Livingston use a false date in order to deprive him of his ability to sue Vroom and obtain appropriate damages.   The Texas DMV investigated, found violations but is unable to provide relief; the Virginia DMV is unable to provide relief; the Better Business Bureau is not empowered to provide any relief; Vroom customer service has been unable to correct their problem; the Vroom legal department is wholly non-responsive; modest fines from state regulators have been ineffective to promote compliance; and Vroom senior management will not act despite actual notice.  An award of substantial punitive damages is the only way to punish Vroom for its systematic egregious conduct.

## COUNT III - VIRGINIA CONSUMER PROTECTION ACT

68.     The Plaintiff re-alleges and incorporates herein by reference all matters set forth in Paragraphs 1 through 67 above.

69.     In the alternative, if Mr. Livingston is not awarded damages for Count I – Breach of Contract or Count II – Fraud, Mr. Livingston is nonetheless entitled to an award of damages under the Virginia Consumer Protection Act (VCPA).

70.     The VCPA establishes a private right of action for a customer aggrieved by a fraudulent or deceptive consumer transaction within the Commonwealth of Virginia. Va. Code §59.1-200.

71. Vroom is now, and was at all relevant times mentioned herein, a "supplier" of "goods" or "services," and engaged in "consumer transactions," as those terms are defined in§ 59.1-198 of the VCPA, by advertising, offering, and selling vehicles to consumers.

72. A "consumer transaction" includes the sale or offering for sale of "goods or services to be used primarily for personal, family, or household purposes," which applies to car sales. Va. Code §59.1-198; *Alexander v. Southeastern Wholesale Corp.*, 978 F. Supp. 2d 615, 621-22 (E.D. Va. 2001).

73. The VCPA also prohibits misrepresenting goods for having certain characteristics and using any form of deception in connection with a consumer transaction. Va. Code §59.1-200(A)(5), (14).

74. Vroom misrepresented that the CR-V could be legally titled, registered, and operated in Virginia. Vroom also misrepresented that delays were caused by a lack of insurance documentation, emissions testing requirements, signing contracts with false dates, the pandemic, the DMV, and two separate limited power of attorney forms.

75. Under the VCPA, Mr. Livingston is entitled to recover actual damages as a result of his lack of title. Moreover, Vroom willfully deceived Mr. Livingston into thinking it had title to the CR-V, and accordingly, Mr. Livingston is entitled to an award of three times his actual damages incurred, as well as an award for his reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, as to Counts I and II, the Plaintiff, prays that this Court award judgment for compensatory damages in the amount of $50,000; an award for his actual costs and reasonable attorney's fees; and an award of $350,000, the maximum punitive damages as allowed by Virginia law. As to Count III, the Plaintiff, prays that this Court award judgment for compensatory damages in

the amount of $50,000; an award for his actual costs and reasonable attorney's fees.

Trial by jury is demanded.

Dated: April 20, 2022

Respectfully submitted,

JASON LIVINGSTON

*/s/ Jason P. Livingston*
Jason P. Livingston
Virginia Bar No. 42328
1306 Idstone Way
Midlothian, VA 23112
Telephone:  (804) 873-8665
Jason.Livingston@yahoo.com
*Counsel for Plaintiff, pro se*

CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff Jason Livingston hereby certifies that on this 20th day of

April, 2022, a copy of the foregoing document was filed electronically with the Court's CM/ECF

system and thereby served electronically upon all ECF-registered counsel of record.

> JASON P. LIVINGSTON
>
> */s/ Jason P. Livingston*
> Jason P. Livingston
> Virginia Bar No. 42328
> 1306 Idstone Way
> Midlothian, VA 23112
> Telephone: (804) 873-8665
> Jason.Livingston@yahoo.com
> *Counsel for Plaintiff, pro se*